# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3027 | **DATE** | 1/13/2005 |
| **CASE TITLE** | New Freedom Mortgage Corporation vs. C & R Mortgage Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Conrad Ulz's motion to vacate default judgment (119-1) entered against him is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 14 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW6 | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEW FREEDOM MORTGAGE CORPORATION, </br></br> Plaintiff, </br></br> v. </br></br> C & R MORTGAGE CORPORATION, EXECUTIVE LAND TITLE, INC., LAWYERS TITLE INSURANCE CORPORATION, JUDITH BARYS, LAWRENCE CALLERO, SHARONE HEARD, WILLIAM MORGAN, KATHLEEN NELLESSEN, and OLLIE SIMS, HORACE HERDLE; and CONRAD ULZ (individually and d/b/a CMR CONSTRUCTION COMPANY and d/b/a UMARC, LTD.), </br></br> Defendants. | No. 03 C 3027 </br> Paul E. Plunkett, Senior Judge </br></br> DOCKETED </br> JAN 1 4 2005 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, New Freedom Mortgage Corporation ("New Freedom"), has sued defendants for various violations of Illinois common law, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Consumer Fraud Act), and violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* Some six months ago a default judgment was entered against Defendant Ulz, and now Ulz has filed a Federal Rule of Civil Procedure 60(b) ("Rule") motion seeking relief from that judgment. Because Ulz repeatedly disregarded court procedures and orders before and after default judgment was entered against him, we deny his motion to vacate.



## Facts

### Factual Background

As alleged in the complaint, Ulz participated in a scheme to defraud Plaintiff of $440,000. Ulz prepared loan application documents on behalf of Sharone Heard, a woman with excellent credit. The documents included a loan application, a borrower's certification, an occupancy statement, a Housing and Urban Development settlement statement, a residential appraisal report and a recertification of value report. The loan application, signed by Heard, represented that: (1) no loans other than New Freedom's first mortgage loan were extended for the purchase of the home; (2) Heard would make a down payment in excess of $100,000 of her own, non-borrowed funds, to purchase the home; and (3) Heard intended to occupy the home as her primary residence after the closing. Plaintiff relied on these documents in approving the loan and later disbursed the funds to Ulz and the other defendants involved in the scheme.

In reality, Heard had no intention of ever living in the home. The loan was actually meant to aid the home's previous owner from losing the home in a foreclosure proceeding. Contrary to her representations on the loan application, Heard had taken out an additional loan in order to pay for the down payment on the home. Finally, Heard never intended to make any payments to Plaintiff to repay the loan. Ulz is alleged to have been the primary architect of the scheme and, thus, would have been well aware of the misrepresentations made to Plaintiff.

### Procedural Background

Plaintiff filed its complaint against Ulz and his co-defendants on May 22, 2003. Ulz was personally served on June 4, 2003. Ulz mailed his answer to the complaint directly to Plaintiff's

attorney, but failed to filed to file that answer with the clerk of the court. On July 7, 2003, Plaintiff's attorney sent Ulz a letter reminding him that the "Federal Rules of Civil Procedure require that all papers in response to the complaint must be filed with the court." Ulz ignored this notice and did not file his answer with the Court until after receiving notice of Plaintiff's motion for default on September 11, 2003. The answer he finally filed with the Court on September 22, 2003, did not comply with Federal Rule of Civil Procedure 8(b). Plaintiff submitted its motion for default on October 1, 2003. Ulz, although having been sent notice of that motion, did not appear, and thus on that day, this Court entered an order of default. Ulz claims he never received notice of this order. On June 3, 2004, again after notice to Ulz, this Court entered a default judgment against him. On December 2, 2004, Ulz filed this motion to vacate the default judgment.

## Discussion

Relief under Rule 60(b) is an extraordinary remedy granted only in exceptional circumstances. *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir. 1995). The movant must show: (1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original action. *United States v. Indoor Cultivation Equip.*, 55 F.3d 1311, 1313 (7th Cir. 1995). Ulz fails on at least the first two of these requirements.

## Good Cause

Ulz argues that he had good cause for defaulting on the claim filed against him. Ulz claims his lapses should be excused because he was a pro se defendant who misunderstood the procedural mechanisms he needed to follow. He says he did not understand that he needed to file an answer to

Plaintiff's complaint with the clerk of the court; the form such an answer should take; or when he should appear in court. But pro se status does not relieve a litigant from the duty to follow the rules of procedures or court-imposed deadlines, particularly where, as here, he is later able to secure counsel to defend against a default judgment. *Jones v. Phipps*, 39 F.3d 158, 163, 165 (7th Cir. 1994) ("If [the defendant] was able to get an attorney *after* the default judgment was entered, why not before?"). Moreover, Ulz's claim of ignorance is belied by the fact that he received several notices and explanations instructing how to proceed. This, coupled with Ulz's behavior after default was ordered and eventually entered against him, leads us to a finding that he has not established good cause for his default.

## **Quick Action To Correct Default**

Ulz's most egregious disregard of court procedures came after default judgment was entered, when he waited six months to seek to vacate the default. "Quick action to attack a default judgment is required because the cement of finality hardens each and every day beyond the entry of the judgment; the winning party increasingly fashions its expectations and affairs on having and holding the judgment as time passes." *Jones*, 139 F.3d at 165. For this reason, Rule 60(b) motions must be made within "a reasonable time." Fed. R. Civ. P. 60(b). The facts of each case dictate what amount of time is reasonable, but in general, courts look to "the interest in finality, the reasons for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice, if any, to other parties." *See Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) (discussing motions filed under 60(b)(6)).

-4-

Ulz claims he never received notice of the October 1, 2003 order of default. As Plaintiff notes, Ulz had a duty to monitor the progress of the litigation against him and so may have done a minimum of investigation to inquire about the status of his case. *See Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (citing *Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993)). Instead, he remained inactive for a period of nearly a year.

More importantly, Ulz does not deny that he was notified on June 3, 2004, that a final judgment was entered against him. Yet he did not file his motion to vacate that judgment until December 2, 2004, six months later. The only explanation offered for this delay is that Ulz had assumed all court documents sent to him to pertained to other defendants. While many of the documents did concern his co-defendants, the notice of the default judgment entered against him, accompanied by the motion to enter the judgment filed by Plaintiff, quite clearly informed Ulz that he was jointly and severally liable for $307,937.48. Yet even this information, succinctly presented in understandable English, did not spur Ulz to action. Not until Plaintiff began an examination of his assets on September 9, 2004, did Ulz claim to realize the magnitude of the court proceedings and his need for an attorney. Finding an attorney took him an additional two months, however, an action he took only after receiving notice of a turn-over motion. Ulz, through his attorney, finally requested leave to file the motion to vacate on November 18, 2004.

We must also take into account the considerable prejudice to Plaintiff if the motion is granted. Ulz argues that vacating the judgment would not prove burdensome because the case has not yet been litigated. This may have been a viable argument if the case had not terminated on June 3, 2004. Default judgments have been entered against two of Ulz's co-defendants and the rest have reached settlement agreements with Plaintiff. Moreover, Plaintiff has already begun the process of

determining Ulz's assets in order to collect the judgment from him. Given the unreasonableness of Ulz's delay in seeking to vacate the judgment against him, we do not find requiring Plaintiff to return to court to begin the litigation process over again to be either fair or equitable. We abhor defaults because all too often they deprive a party of his day in court, but the Plaintiff at some point becomes entitled to a final resolution of his claim. This two-year old case is pockmarked with missteps and inaction by Defendant Ulz. His misconduct has cost him his right to his day in court.

### **Meritorious Defense**

Because Ulz has failed to show good cause or act quickly to correct his default, we do not need to investigate whether Ulz may have a meritorious defense, as "the existence of a meritorious defense, standing alone, does not excuse carelessness and disregard for court orders and schedules." *Harold Washington Party v. Cook County, Ill. Democratic Party*, 984 F.2d 875, 880 (7th Cir. 1993); *see also Jones*, 39 F.3d at 165; *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46–47 (7th Cir. 1994).

Finally, Ulz has filed his motion under subsections (1) and (6) of Rule 60(b), yet it is well settled that the two subsections are mutually exclusive and that "if the asserted grounds for relief fall within the terms of the first three clauses of Rule 60(b), relief under the catchall provision [of subsection (6)] is not available." *Brandon v. Chicago Bd. of Educ.*, 143 F.3d 293, 295 (7th Cir. 1998) (quoting *Wesco Prods. Co. v. Alloy Auto. Co.*, 880 F.2d 981, 983 (7th Cir. 1989). Ulz's arguments for vacating the judgment fall squarely within the terms of Rule 60(b)(1), which covers "mistake, inadvertence, surprise, or excusable neglect." Therefore, he cannot claim relief under Rule 60(b)(6).

## Conclusion

Based on the foregoing, Defendant Ulz's motion to vacate the June 3, 2004 default judgment entered against him is denied.

**ENTER:**

[signature]

SENIOR U. S. DISTRICT JUDGE

DATED: JAN 13 2005